**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

JANE DOE,

                      *Plaintiff,*

    -*against* -

JOHN DOE,

                      *Defendant.*

Index No. 20-5329 (KAM)(CLP)

**ANSWER &**
**COUNTERCLAIM**

# ANSWER

Defendant John Doe, by and through his undersigned counsel, answers the Complaint of Jane Doe as follows:

1.    States that Paragraph 1 of the Complaint sets forth conclusions of law, to which no response is required. To the extent that allegations of fact are made, John Doe denies said allegations.

2.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 2 of the Complaint.

3.    Denies the allegations set forth in Paragraph 3 of the Complaint.

4.    States that Paragraph 4 of the Complaint sets forth conclusions of law, to which no response is required. To the extent that allegations of fact are made, John Doe denies said allegations.

5.    States that Paragraph 5 of the Complaint sets forth conclusions of law, to which no response is required. To the extent that allegations of fact are made, John Doe denies said allegations.

6. Denies the allegations set forth in Paragraph 6 of the Complaint, except admits that John Doe and Jane Doe engaged in a personal relationship and that John Doe gave money to Jane Doe at certain times.

7. Denies the allegations set forth in Paragraph 7 of the Complaint, except admits that John Doe and Jane Doe engaged in sexual intercourse.

8. Denies the allegations set forth in Paragraph 8 of the Complaint.

9. Denies the allegations set forth in Paragraph 9 of the Complaint.

10. Denies the allegations set forth in Paragraph 10 of the Complaint.

11. Denies the allegations set forth in Paragraph 11 of the Complaint, and states that the quoted statements were not made by John Doe and speak for themselves.

12. Denies the allegations set forth in Paragraph 12 of the Complaint, and states that the quoted communications are of unknown provenance and accuracy.

13. Denies the allegations set forth in Paragraph 13 of the Complaint, except that Jane Doe came to John Doe's apartment in or around April 2019.

14. Denies the allegations set forth in Paragraph 14 of the Complaint.

15. Denies the allegations set forth in Paragraph 15 of the Complaint, and states that the quoted communications are of unknown provenance and accuracy.

16. Denies the allegations set forth in Paragraph 16 of the Complaint, except admits that John Doe and Jane Doe travelled to Florida in or around June 2019.

17. Denies having knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 17 of the Complaint.

18. Denies the allegations set forth in Paragraph 18 of the Complaint, and states that the quoted communications are of unknown provenance and accuracy.

19. Denies the allegations set forth in Paragraph 19 of the Complaint, and states that the quoted communications are of unknown provenance and accuracy.

20. Denies the allegations set forth in Paragraph 20 of the Complaint, except admits that John Doe and Jane Doe met in London in or around September 2019.

21. Denies the allegations set forth in Paragraph 20 of the Complaint, except admits that John Doe went to a doctor in or around October 2019.

22. Denies the allegations set forth in Paragraph 22 of the Complaint, and states that the quoted communications are of unknown provenance and accuracy.

23. Denies the allegations set forth in Paragraph 23 of the Complaint, and states that the quoted communications are of unknown provenance and accuracy.

24. Denies the allegations set forth in Paragraph 24 of the Complaint, and states that the quoted communications are of unknown provenance and accuracy.

25. Denies having knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 25 of the Complaint.

26. Denies the allegations set forth in Paragraph 26 of the Complaint, and states that the quoted communications are of unknown provenance and accuracy.

27. Denies the allegations set forth in Paragraph 27 of the Complaint, except admits that John Doe and Jane Doe spoke by telephone in or around October-November 2019.

28. Denies the allegations set forth in Paragraph 28 of the Complaint.

29. Denies the allegations set forth in Paragraph 29 of the Complaint.

30. Denies the allegations set forth in Paragraph 30 of the Complaint.

31. Denies the allegations set forth in Paragraph 31 of the Complaint, and states that the quoted communications are of unknown provenance and accuracy.

32. Denies the allegations set forth in Paragraph 32 of the Complaint, and states that the quoted communications are of unknown provenance and accuracy.

33. Denies the allegations set forth in Paragraph 33 of the Complaint, and states that the quoted communications are of unknown provenance and accuracy.

34. Denies the allegations set forth in Paragraph 34 of the Complaint, and states that the quoted communications are of unknown provenance and accuracy.

35. Denies the allegations set forth in Paragraph 35 of the Complaint, and states that the quoted communications are of unknown provenance and accuracy.

36. Denies the allegations set forth in Paragraph 36 of the Complaint, and states that the quoted communications are of unknown provenance and accuracy.

37. Denies the allegations set forth in Paragraph 37 of the Complaint, and states that the quoted communications are of unknown provenance and accuracy.

38. Denies the allegations set forth in Paragraph 38 of the Complaint, and states that the quoted communications are of unknown provenance and accuracy.

39. Denies the allegations set forth in Paragraph 39 of the Complaint, and states that the quoted communications are of unknown provenance and accuracy.

40. Denies the allegations set forth in Paragraph 40 of the Complaint, and states that the quoted communications are of unknown provenance and accuracy.

41. Denies the allegations set forth in Paragraph 41 of the Complaint.

42. Denies the allegations set forth in Paragraph 42 of the Complaint, except admits that John Doe and Jane Doe's relationship continued, and that John Doe and Jane Doe travelled to Florida in or around January 2020.

43. Denies the allegations set forth in Paragraph 43 of the Complaint.

44. Denies having knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 44 of the Complaint.

45. Denies having knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 45 of the Complaint.

46. Denies having knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 46 of the Complaint.

47. Restates his responses to all preceding allegations as if set forth in full herein.

48. Denies the allegations set forth in Paragraph 48 of the Complaint.

49. Denies the allegations set forth in Paragraph 49 of the Complaint.

50. Denies the allegations set forth in Paragraph 50 of the Complaint.

51. States that Paragraph 51 of the Complaint sets forth conclusions of law, to which no response is required.  To the extent that allegations of fact are made, John Doe denies said allegations.

52. Restates his responses to all preceding allegations as if set forth in full herein.

53. States that Paragraph 53 of the Complaint sets forth conclusions of law, to which no response is required.  To the extent that allegations of fact are made, John Doe denies said allegations.

54. States that Paragraph 54 of the Complaint sets forth conclusions of law, to which no response is required.  To the extent that allegations of fact are made, John Doe denies said allegations.

55. States that Paragraph 55 of the Complaint sets forth conclusions of law, to which no response is required. To the extent that allegations of fact are made, John Doe denies said allegations.

56. Restates his responses to all preceding allegations as if set forth in full herein.

57. States that Paragraph 57 of the Complaint sets forth conclusions of law, to which no response is required. To the extent that allegations of fact are made, John Doe denies said allegations.

58. States that Paragraph 58 of the Complaint sets forth conclusions of law, to which no response is required. To the extent that allegations of fact are made, John Doe denies said allegations.

59. States that Paragraph 59 of the Complaint sets forth conclusions of law, to which no response is required. To the extent that allegations of fact are made, John Doe denies said allegations.

60. States that Paragraph 60 of the Complaint sets forth conclusions of law, to which no response is required. To the extent that allegations of fact are made, John Doe denies said allegations.

61. Restates his responses to all preceding allegations as if set forth in full herein.

62. Denies the allegations set forth in Paragraph 62 of the Complaint.

63. States that Paragraph 63 of the Complaint sets forth conclusions of law, to which no response is required. To the extent that allegations of fact are made, John Doe denies said allegations.

64. Restates his responses to all preceding allegations as if set forth in full herein.

65. Denies the allegations set forth in Paragraph 65 of the Complaint.

66. States that Paragraph 66 of the Complaint sets forth conclusions of law, to which no response is required. To the extent that allegations of fact are made, John Doe denies said allegations.

67. Restates his responses to all preceding allegations as if set forth in full herein.

68. Denies the allegations set forth in Paragraph 68 of the Complaint.

69. Denies having knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 69 of the Complaint.

70. States that Paragraph 70 of the Complaint sets forth conclusions of law, to which no response is required. To the extent that allegations of fact are made, John Doe denies said allegations.

71. States that the prayer for relief sets forth conclusions of law, to which no response is required. To the extent that allegations of fact are made, John Doe denies said allegations.

**AFFIRMATIVE DEFENSES**

John Doe asserts the following affirmative defenses in response to the Complaint:

72. Jane Doe's claims are barred, in whole or in part, by her failure to state a claim upon which relief can be granted.

73. Jane Doe's claims are barred, in whole or in part, by her failure to plead facts sufficient to state a claim.

74. Jane Doe's claims are barred, in whole or in part, by her unclean hands.

75. Jane Doe's claims are barred, in whole or in part, by John Doe's right to set-off losses incurred as a result of Jane Doe's misconduct.

76. Jane Doe's claims are barred, in whole or in part, by the statute of limitations.

77. Jane Doe's claims are barred, in whole or in part, by the doctrines of laches, waiver and estoppel.

78. Jane Doe's claims are barred, in whole or in part, by the doctrine of assumption of the risk.

79. Jane Doe's claims are barred, in whole or in part, by the doctrines of contributory negligence and comparative fault.

80. Jane Doe's claims are barred, in whole or in part, by the doctrine of mutual mistake of fact.

## COUNTERCLAIMS

**A. General Allegations Relevant To All Counterclaims.**

81. Jane Doe's complaint is a shakedown attempt, using the threat of public embarrassment to extort a massive and unwarranted payout from John Doe.

82. The reality of the situation is as follows: until the day he got a demand letter from Jane Doe's attorney accusing him of knowingly infecting her with HSV-2, John Doe believed that he was in a serious, long-term romantic relationship with Jane Doe. But based upon her subsequent actions, and the admissions in her complaint, Jane Doe was clearly deceiving him.

83. It is now clear that, from the moment she was diagnosed with HSV-2, and possibly before that, Jane Doe intended to take John Doe for everything she could. While still

pretending to be his girlfriend, Jane Doe sought out an attorney and began to gather "evidence" to support her claims. She began to record her telephone and in-person conversations with John Doe, she surreptitiously entered his apartment and photographed the contents of his medicine cabinet, and she took personal items from John Doe without his knowledge or consent.

84. All the while she continued to socialize with John Doe, have sexual intercourse with John Doe, go on trips with John Doe, and otherwise act like his girlfriend in every way. She also continued to ask John Doe to give her gifts, including money, under the pretense that she was in a serious relationship with him. Indeed, Jane Doe was asking John Doe for money even while her lawyer's demand letter was being couriered to his home.

85. Nor is there any merit to Jane Doe's substantive allegations; there is no evidence whatsoever that John Doe had HSV-2 prior to the events set forth in the Complaint, so it is just as likely, if not more likely, that Jane Doe infected him. And Jane Doe's allegation of sexual assault was completely made up after she learned that John Doe's medical records might well not support her principal claim.

86. Accordingly, John Doe is entitled to get back the money and gifts he gave to Jane Doe based upon her false statements and false pretenses, and if she knowingly or negligently infected him with HSV-2, he is entitled to the same damages from her that she seeks from him.

87. John Doe is a natural person who has resided in Florida since April 2020.

88. Jane Doe is a natural person who upon information and belief, based upon her allegations in the Complaint, resides in Illinois.

89. Venue and jurisdiction are established by Jane Doe's affirmative act in filing her Complaint in this Court.

90. John Doe is an attorney who practices law in New York.

91. While going through a divorce, he visited various internet dating sites to meet new people.

92. In March 2019 he encountered Jane Doe on one such dating site. After going on a few dates, they began having unprotected sexual intercourse.

93. Before having sex, John Doe and Jane Doe discussed STDs. Both stated that they believed themselves to be disease-free, but neither demanded or provided specific evidence to support their statements. Jane Doe never asked John Doe to produce medical documentation, or even to affirmatively state that he had been tested and was negative for all STDs, and John Doe similarly did not ask it of Jane Doe.

94. John Doe's statement was entirely truthful—he had never had symptoms of any STD, and he had never been told by any medical authority that he had tested positive for any STD.

95. The relationship between John Doe and Jane Doe progressed such that John Doe believed he was in a monogamous romantic relationship with Jane Doe. Jane Doe affirmatively and repeatedly told John Doe that she was his girlfriend, that she was not involved with anyone else, and that she saw their relationship progressing into the future.

96. Relying on these assurances, John Doe continued to see Jane Doe. Based upon the same assurances, he also started giving gifts to Jane Doe, including gifts of money, as follows:

| DATE | AMOUNT |
|---|---|
| 6/7/19 | $4,000 |
| 7/8/19 | $7,000 |

| | |
|---|---|
| 7/31/19 | $7,000 |
| 8/28/19 | $7,000 |
| 10/4/19 | $12,500 |
| 11/6/19 | $9,500 |
| 12/10/19 | $6,000 |
| 1/7/20 | $6,000 |
| 2/10/20 | $6,500 |
| 3/9/20 | $2,000 |
| **TOTAL** | $72,500 |

97. In addition, John Doe gave Jane Doe an $800 suitcase, plane tickets worth approximately $2,500 and several gifts of jewelry worth approximately $1,500.

98. John Doe also started taking Jane Doe on vacations with him.

99. John Doe also gave Jane Doe a key to his apartment, on the understanding that she could occasionally access the apartment as a convenience after asking specific permission on each occasion to do so, while waiting for John Doe to return to the apartment.

100. During the relevant time period, John Doe did not have sexual intercourse with anyone other than with Jane Doe.

101. Once Jane Doe started displaying symptoms of genital herpes, John Doe was very concerned—for Jane Doe. He reasoned that, given that the vast majority of infections are asymptomatic, it was just as likely that either of them—or both—had been unknowingly infected before the relationship began.

102. Jane Doe's allegation that John Doe's prescription for valacyclovir proves that he was previously infected with HSV-2 is false; upon information and belief, valacyclovir is prescribed to treat both genital herpes and cold sores, but at significantly different doses. John Doe's prescription was for cold sores, a condition he never hid from Jane Doe.

103. Indeed, upon information and belief, Jane Doe's realization that the valacyclovir prescription was at the "wrong" dose is what triggered her decision to add the patently false sexual assault claim, which was not mentioned in her demand letter.

104. In order to reassure Jane Doe, John Doe carried on as normal rather than distress her with what at the time seemed like wild allegations of infidelity or deliberate deception. He also did not end the relationship, reasoning that he was most likely already infected; if he did not have HSV-2 before, he had certainly been exposed to it by Jane Doe before her symptoms became apparent.



106. During this time period, Jane Doe never discussed breaking up with John Doe. Indeed, she continued to have unprotected sex with him. Jane Doe also had more adventurous sexual tastes than John Doe; she persuaded him to experiment with increasingly rough sex, and she continued to demand rough sex with increasing frequency after her HSV-2 outbreak.

12

107. Jane Doe also increased her demands for money and other gifts, and she would express more and more frustration if John Doe could not satisfy these demands.

108. John Doe continued to believe that he and Jane Doe were in a committed romantic relationship until he received a demand letter from her current counsel making a series of wild and baseless allegations; indeed, as mentioned above, his last gift of money to Jane Doe took place on March 9, 2020—the very day he received her letter.

B. **First Counterclaim: Fraud**.

109. Based upon the statements made in Jane Doe's demand letter and in the Complaint, John Doe realized that he had been conned.

110. Upon information and belief, Jane Doe falsely told John Doe that she considered herself to be his girlfriend, that their relationship was monogamous, and that their relationship had a future, in order to induce him to part with substantial sums of money.

111. This conclusion is bolstered by a series of facts.

112. First, Jane Doe's allegations reveal that, at all relevant times, she considered John Doe to be a "John" who was paying her for sex and companionship (see, e.g. Compl. ¶ 6) rather than a serious romantic partner.

113. Second, Jane Doe's admitted actions and asserted motivations are totally inconsistent. For instance, Jane Doe alleges that she was highly paranoid about STDs, and indeed alleges that she kept a record of every time she had sex with John Doe, but she admittedly had unprotected sex with someone she had just met over the internet without asking for any substantial evidence of STD status. This contradiction leads to a strong inference that Jane Doe's asserted motives are false, and that she was memorializing every sexual encounter to support a planned law suit or blackmail attempt.

114. Third, Jane Doe's alleged response to her infection is similarly inconsistent. If, as she maintains, she had tested negative for HSV and HPV just before her relationship with John Doe began, and she had only had sex with John Doe since then, she would have concluded immediately that John Doe was the source of her infection. This too leads to the inference that Jane Doe no longer—if she ever did in the first place—considered herself to be in a romantic relationship with John Doe, and that she either affirmatively lied to him or concealed the relevant facts from John Doe in order to dupe him into giving her more money and so she could gather more material to bolster her lawsuit.

115. Fourth, her preparation for litigation is consistent with John Doe's belief that Jane Doe was deceiving him by pretending to be in a relationship with him solely to advance her own financial interests. Jane Doe's conduct in seeking out an attorney, sneaking into John Doe's apartment without permission or John Doe's knowledge to rummage through his most personal effects and to photograph the contents of his medicine cabinet and closed drawers, and allegedly recording conversations surreptitiously, while repeatedly demanding more and more money from him, supports an inference that Jane Doe was deceiving John Doe throughout their relationship.

116. Fifth, Jane Doe's continued demands for rough, aggressive sex even after she was infected suggest a desire to ensure that John Doe be infected too, in order to make it impossible for him to show that he was not infected with HSV-2 or HPV.

[redacted]

14



118.     Based upon the foregoing, Jane Doe intentionally deceived John Doe, with the intention of causing him to give her money and other valuable items under false pretenses. John Doe reasonably relied upon Jane Doe's material misstatements and omissions and handed over substantial sums of money and valuable items, causing him financial injury. And because Jane Doe's conduct reached the level of criminal fraud, John Doe is entitled to punitive damages from Jane Doe.

C. **Second Counterclaim: Trespass**

119.     As Jane Doe admits in her Complaint, she snuck into John Doe's apartment on January 18, 2020, and again on January 22, 2020, to search for material to support her lawsuit.

120.     Jane Doe did not seek permission to enter John Doe's apartment on either of those occasions. Upon information and belief, on both days Jane Doe entered the apartment only after first confirming that John Doe was at his office, so she could search at her leisure without risk of interruption.

121.     Jane Doe knew that she was not authorized to enter for that purpose, that John Doe did not consent to her entry for that purpose, and Jane Doe entered in order to injure John Doe.

122. During these unauthorized entries, Jane Doe photographed private items belonging to John Doe, including, upon information and belief, several prescription bottles as well as other items of a personal nature (see, e.g., Compl. ¶¶ 40-41).

123. Upon information and belief, during these unauthorized entries, Jane Doe also took personal items belonging to John Doe, including a gold ring and stacks of foreign currency John Doe had left over from business trips.

124. John Doe, through his attorney, subsequently demanded the return of the key. Because the key was not returned, John Doe had to take additional security measures to secure his apartment.

125. On account of Jane Doe's various trespasses, John Doe is entitled to money damages in an amount to be determined by the trier of fact, and return of the purloined items. And because Jane Doe's conduct reached the level of criminal trespass and burglary, John Doe is entitled to punitive damages from Jane Doe.

**D. Third Counterclaim: Unjust Enrichment/Money Had And Received.**

126. As set forth above, although Jane Doe and John Doe never entered into an enforceable contract, John Doe conferred significant benefits, including money, on Jane Doe.

127. Based upon Jane Doe's conduct, it would be inequitable for her to retain the value of said benefits, so they must be restored to John Doe.

**E. Fourth Counterclaim: Negligence/Battery.**

128. As set forth above, John Doe never tested positive for or exhibited any symptoms of HSV-2 until he began his relationship with Jane Doe. He has subsequently tested positive for HSV-2.

129. Upon information and belief, John Doe contracted HSV-2 from engaging in sexual intercourse with Jane Doe.

130. Upon information and belief, Jane Doe knew she was infected or had been exposed to HSV-2 before she engaged in unprotected sex with John Doe. Jane Doe knowingly and unreasonably put John Doe at risk of infection, and he was in fact infected.

131. Upon information and belief, after her own positive diagnosis, Jane Doe wanted to be certain that John Doe was also infected, in order to support her planned shakedown/legal action. Jane Doe therefore engaged in rough sex with John Doe with the specific intent of infecting him with HSV-2.

132. Based upon the foregoing, Jane Doe either negligently or intentionally infected John Doe with HSV-2. John Doe is entitled to money damages for the injuries caused by Jane Doe's battery and/or negligence. John Doe is also entitled to punitive damages if Jane Doe intentionally infected him with HSV-2.

**F. Conclusion.**

133. John Doe respectfully requests that this Court issues a judgment as follows:

   i. Dismissing all claims asserted by Jane Doe;

   ii. Granting John Doe judgment on his first counterclaim for fraud and awarding John Doe ordinary damages and punitive damages in an amount to be determined by the trier of fact;

   iii. Granting John Doe judgment on his second counterclaim for trespass and awarding John Doe ordinary damages and punitive damages in amounts to be determined by the finder of fact, as well as directing the return of all purloined items;

   iv. Granting John Doe judgment on his third counterclaim for unjust enrichment and money had and received, and awarding John Doe damages;

   v. Granting John Doe judgment on his fourth counterclaim for negligence and battery and awarding John Doe ordinary damages and punitive damages in amounts to be determined by the finder of fact; and

   vi. Granting John Doe any other and further relief the Court sees fit.

Dated: New York, New York
February 5, 2021

                                             **SCHLAM STONE & DOLAN LLP**

By: _____
Niall D. Ó Murchadha
26 Broadway
New York, NY 10004
(212) 344-5400 (Telephone)
(212) 344-7677 (Facsimile)
E-Mail: nomurchadha@schlamstone.com

*Counsel for Defendant John Doe*

18