LAW OFFICES OF
# JEFFREY LICHTMAN
11 EAST 44TH STREET
SUITE 501
NEW YORK, NEW YORK 10017
www.jeffreylichtman.com

JEFFREY LICHTMAN
JEFFREY EINHORN
JASON GOLDMAN

PH: (212) 581-1001
FX: (212) 581-4999

January 20, 2022

**BY EMAIL: cho_chambers@nyed.uscourts.gov**
Hon. James R. Cho
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: **Doe v. Doe**, No. 20 CV 05329 (KM) (JRC)

Dear Judge Cho:

    I write on behalf of Plaintiff Jane Doe and together with counsel for Defendant John Doe to respectfully provide the Court with the parties' joint letter concerning their outstanding discovery disputes following multiple meet and confers, which have successfully reduced the quantity of contested issues. For the sake of clarity, each party will present the Court with the nature of their disputed interrogatories and requests for documents, as noted in Your Honor's individual rules of practice. Should the Court wish the parties to respond to each other's summaries in writing, counsel jointly request that a schedule for such be fixed.

I.     <u>Plaintiff's Statement Regarding Discovery Disputes</u>

    A.     Document Requests

    Plaintiff has two related requests for document production that remain refused by Defendant. First, Plaintiff requested all correspondence concerning Defendant's use of websites, applications or businesses for dating, romantic, or in-person sexual interests, including any escort or sugar daddy services, within the past five years. This included any correspondence with other users of these services. Second, defendant requested credit card statements reflecting payments made in relation to seekingarrangement.com, a website that he utilized to meet Plaintiff.

  To briefly explain these requests, Plaintiff and Defendant met in March 2019 via seekingarrangement.com, a dating website which pairs wealthy men with woman seeking to receive money for their companionship and sexual activities. The parties began speaking online via the website and thereafter transitioned to other forms of communication and finally, began dating wherein they had unprotected sex on many occasions. It is Plaintiff's contention that Defendant infected her with HSV-2 during their relationship and therefore Defendant's sexual history is highly relevant in this action. Should the Court order Defendant to disclose the requested information, Plaintiff would agree to provide the same – both her sexual history and use of dating or romantic websites.

  Further, discovery concerning Defendant's sexual history and use of dating websites – including sugar daddy websites where he paid for sexual activities – would permit Plaintiff to defend against Defendant's counterclaims, which portray defendant as an innocent who "believed that he was in a serious, long-term romantic relationship with Jane Doe," was preyed upon by her, and was the victim of a "shakedown attempt." Answer and Counterclaims at ¶¶ 81, 82. Put another way, Defendant claims that he provided Plaintiff with money and gifts under "false pretenses," and requests that they be returned Id. at ¶¶ 86, 126-127. Discovery concerning the defendant's prior use of sugar daddy websites, specifically, would establish that he was aware of the arrangements required by the women that he met online. Furthermore, Defendant alleges in his Answer and Counterclaims that Plaintiff infected him with HSV-2 – the source of Defendant's infection was therefore placed in issue by him and is highly relevant to Plaintiff's ability to defend against his claims as to the causation of his infection. Id. at ¶ 85 ("there is no evidence whatsoever that John Doe had HSV-2 prior to the events set forth in the Complaint, so it is just as likely, if not more likely, that Jane Doe infected him"); ¶¶ 128-132 ("Upon information and belief, John Doe contracted HSV-2 from engaging in sexual intercourse with Jane Doe").

  Finally, to address Defendant's privacy concerns, Plaintiff would agree to a protective order concerning the names and contact information for the Defendant's prior sexual partners, and agree not to contact these third parties without first seeking leave of Court. See, e.g., Allen v. G.D. Searle & Co., 122 F.R.D. 580, 582 (D. Oregon 1988).

  B.  Interrogatories

  Plaintiff has requested and Defendant objected to multiple questions concerning his sexual activity and dating history. Specifically, Plaintiff has inquired of Defendant: 1) the names and contact information for each person with whom he had sex during the past seven years; 2) the names of those persons with whom he engaged in unprotected intercourse; and 3) the names of those partners who have been infected with a sexually transmitted disease to his knowledge. Additionally, Defendant has refused to provide: 1) a list of the dating and romantic websites that

he utilized; 2) details concerning his billing history with the sugar daddy website seekingarrangement.com where he met Plaintiff; and 3) the names and contact information for the persons he met through seekingarrangement.com and to identify the individuals with whom he engaged in sexual intercourse from that website.

As noted above, Defendant's use of dating websites – especially those where it is understood that Defendant would be paying for sexual activities – as well as his sexual history are highly relevant in this case. First, in painting himself in his Answer and Counterclaims as an innocent who was duped into providing "gifts" to Plaintiff under false pretenses and is deserving of the return of this money, Defendant placed at issue his knowledge of pay-for-sex dating websites. Answer and Counterclaims at ¶¶ 84, 86 ("John Doe is entitled to get back the money and gifts he gave to Jane Doe based upon her false statements and false pretenses"). Second, Defendant injected his own sexual history into this case when he accused Plaintiff of knowingly infecting him with HSV-2. See id., at ¶ 131 ("Jane Doe therefore engaged in rough sex with John Doe with the specific intent of infecting him with HSV-2"). As the causation of Defendant's infection is relevant to defend against this claim, his sexual history should not remain protected. See e.g., GEICO v. M.O., 2021 WL 4476783, at *6 (D. Kansas September 30, 2021) ("discovery regarding other sexual partners could be relevant to determining whether M.O.'s infection was caused by M.B."); see also Hoppe v. G.D. Searle & Co., 779 F. Supp. 1413, 1418-19 (S.D.N.Y. 1991) (finding relevant sexual history of Plaintiff on issue of causation of infertility).

II.     Defendant's Statement Regarding Discovery Disputes

Dear Judge Cho,

Below is a summary of the discovery issues that Defendant is asking the Court to address. As noted by Plaintiff's counsel, I can provide a response to Plaintiff's position at or before next week's status conference, as the Court directs.

Missing Documents: During the meet-and-confer process, Defendant identified a series of omissions from Plaintiff's production, some of which have not been fully corrected. First, although Defendant produced text messages between himself and Plaintiff up to March 9, 2020, Plaintiff's text message production cuts off at February 2, 2020. This time period at the end of the parties' relationship is very significant. Second, Plaintiff produced her 2018 tax return but not her 2019 or 2020 tax returns. These documents regarding her financial condition during the time period of the relationship are relevant and discoverable to show Plaintiff's financial dependence-or lack thereof-on Defendant. Third, Plaintiff has failed to produce emails between the parties from May 22 and 24, 2019, as well as spreadsheets attached to emails dated July 15, 2019, and October 18, 2019.

Proof of Domicile: Plaintiff's assertion of diversity jurisdiction is dependent upon her allegation that she moved from New York to Illinois to attend graduate school before this action was filed, but the only document she has produced in support is a lease agreement. Because moving for educational purposes is in se insufficient to establish a change of domicile, see, e.g., Hakkila v. Consolidated Edison Co., 745 F. Supp. 988, 990 (S.D.N.Y. 1990), Plaintiff must produce all documents she intends to rely upon to support her allegation of domicile in Illinois. See, e.g., Halbritter v. Stonehedge Acquisition Rome II, LLC, 2008 U.S. Dist. LEXIS 26042 (S.D.N.Y. April 2, 2008).

Mental Health Evidence: The Amended Complaint repeatedly alleges that Defendant has caused Plaintiff severe mental and emotional distress, see, e.g., ¶ 46 (Plaintiff "suffers chronic stress, anxiety, and depression" and "will likely spend several years in therapy"), which forms a significant portion of her damages claim. In order to contest both causation and the severity of the alleged injuries, Defendant must have access to Plaintiff's mental health/therapy/counseling records, including for time periods before and after her dealings with him. See, e.g., Bridges v. Eastman Kodak Co., 850 F. Supp. 216, 222 (S.D.N.Y. 1994) ("defense counsel has a right to inquire into plaintiffs' pasts for the purpose of showing that their emotional distress was caused at least in part by events and circumstances that were not job related").

Educational Records: Plaintiff has alleged that Defendant's conduct has impinged upon her studies by affecting her performance on the LSAT and the GRE, as well as her subsequent academic performance in graduate school. To respond to these allegations, Defendant must have access to Plaintiff's undergraduate and graduate academic records, including SAT/ACT/GRE/LSAT scores; Plaintiff's limited production of a GRE score report and a class schedule from graduate school is insufficient.

Sex-Tracking Software: Plaintiff has alleged that she used a menstrual-cycle-tracking app to record when she had sexual intercourse with Defendant. Although records have been produced for some time periods, Defendant is entitled to see additional records from time periods before and after the parties had their relationship in order to establish whether this tracking was taking place before and after her dealings with Defendant, or whether she started tracking solely during the course of their relationship, which would tend to show an ulterior motive on Plaintiff's part.

Prior Sexual History & Communications: As can be discussed in more detail at the Court's direction, Defendant believes that Plaintiff's demand that he identify prior sexual partners and produce communications with them is impermissible. Defendant does not have any documents reflecting communications with third parties concerning the fact that he has HSV. If Plaintiff wants to ask Defendant whether he had any conversations during the time period prior to

the Plaintiff's infection that might have led him to think that he had HSV, she can do so at his deposition. Otherwise, these requests are a fishing expedition, based upon "mere speculation" that some unidentified third party might have told Defendant something that might prove relevant. See, e.g., Tottenham v. Trans World Gaming Corp., 2002 U.S. Dist. LEXIS 11313 at *4 (S.D.N.Y. June 21, 2002). The harm to Defendant that would arise from such a fishing expedition would be compounded by the facts that (1) it would require disclosure of highly intimate facts concerning not just Defendant but also third parties, and (2) any attempt to seek discovery from said third parties would necessarily require Defendant to be identified by his real name, thereby destroying the protection of the Court's anonymity order. But that said, if the Court does permit discovery of such materials, Defendant would be entitled to the same production from Plaintiff, including but not limited to online dating service profiles and communications, identification of third parties Plaintiff met through online dating services or otherwise went on dates with, and any communications and texts with third parties concerning her romantic relationships with persons other than Defendant.

Medical Records: Earlier in the discovery process, Plaintiff identified six physicians who might have relevant medical records. Three of the six have responded to subpoenas and produced documents, but the other three have ignored not one but two subpoenas from Defendant. Plaintiff should be directed to obtain these records herself, and if the records are not provided to her, the Court should issue an order directing the physicians to produce the records on pain of contempt. Furthermore, in a recent interrogatory response, Plaintiff identified seven or eight more doctors or medical providers who treated her during the relevant time period; for these individuals and entities, Plaintiff should be required to identify the specific medical issues she sought or received treatment for, and Plaintiff should execute HIPAA releases for relevant records.

Thank you for the Court's consideration on these issues.

Respectfully submitted,

/S/ Jeffrey Lichtman  /S/ Niall O'Murchadha

Jeffrey Lichtman  Niall O'Murchadha
Counsel for Plaintiff  Counsel for Defendant